## Refund of Transfer Inheritance Tax

STRITE, Assistant Deputy Attorney General, December 11, 1934.—You have asked to be advised upon several questions involving refunds of additional

transfer inheritance tax paid to the Commonwealth of Pennsylvania under the Act of May 7, 1927, P. L. 859, 72 PS §2303, and its amendments. The tax imposed under this act is in an amount equal to the difference between the total credit upon Federal estate tax allowable by the Federal law for taxes payable to the State governments and the total taxes actually paid or payable to the Commonwealth of Pennsylvania under inheritance tax laws.

Your questions all involve section 503 of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §503, as last amended by section 1 of the Act of June 1, 1931, P. L. 318, which reads, in part, as follows:

"The Board of Finance and Revenue shall have the power, and its duty shall be, to hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonus, or other moneys alleged to have been paid to the Commonwealth as the result of an error of law or of fact, or of both law and fact, and, upon the allowance of any such petition, to refund such taxes, license fees, penalties, fines, bonus, or other moneys, out of any appropriation or appropriations made for the purpose, or to credit the account of the person, association, corporation, body politic, or public officer entitled to the refund.

"All petitions must be filed with the board within two years of the payment alleged to have been erroneously made, except

"(a) When the estate upon which any transfer inheritance tax has been erroneously paid shall have consisted in whole or in part of a partnership, or other interest of uncertain value, or shall have been involved in litigation, by reason whereof there shall have been an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of two years. In such case, the application for repayment shall be made to the Board of Finance and Revenue, within one year from the termination of such litigation, or ascertainment of such overvaluation."

We shall answer first your questions upon the general jurisdiction of the board, and second your questions upon the limitation of the time for filing petitions for refund. In answering the second group of questions, we shall refer to the facts of specific cases to which you have directed our attention.

### I. The jurisdiction of the board

(a) Does the Board of Finance and Revenue have jurisdiction to consider petitions for refund of additional transfer inheritance tax paid to the Commonwealth under the Act of May 7, 1927, P. L. 859, as amended?

Transfer inheritance tax upon the transfer of property passing from decedents is imposed by the Act of June 20, 1919, P. L. 521, 72 PS §2301, as amended. In order that the Commonwealth might receive the benefit of Federal revenue laws granting a credit on the Federal estate tax for transfer inheritance taxes paid to the State Government, the Act of May 7, 1927, P. L. 859, as amended by the Acts of May 16, 1929, P. L. 1782, and May 12, 1931, P. L. 114, 72 PS §2303, imposed an additional transfer inheritance tax upon the transfer of property taxable under the Act of June 20, 1919, P. L. 521, and its amendments, 72 PS §2301. This additional transfer inheritance tax is equal to the difference between the total credit allowable by the Federal law for tax payable to the State Government and the total taxes actually paid or payable to the Commonwealth and any other State or territory under the inheritance tax laws.

The additional transfer inheritance tax imposed by the terms of this act is

clearly a tax within the meaning of section 503 of The Fiscal Code. When such a tax has been paid to the Commonwealth as the result of an error of law or of fact, or of both law and fact, it is within the power and becomes the duty of the Board of Finance and Revenue to hear and determine a petition for the refund of such tax.

Therefore, you are advised that the Board of Finance and Revenue has jurisdiction to consider petitions for refund of additional transfer inheritance taxes paid to the Commonwealth under the Act of May 7, 1927, P. L. 859, as amended.

(b) Do the General Appropriation Acts of 1931 and 1933 give the Board of Finance and Revenue a jurisdiction independent of the specific provisions of The Fiscal Code?

The General Appropriation Act of 1931, no. 15A, makes an appropriation to the Board of Finance and Revenue for refunding transfer inheritance taxes as follows:

"For refunding transfer inheritance taxes on estates of resident decedents paid in error or over-paid, the sum of four hundred seventy-five thousand dollars ($475,000)."

The General Appropriation Act of 1933, no. 300A, contains a similar appropriation (to the Treasury Department) in the sum of $300,000.

As hereinafter stated, the jurisdiction of the Board of Finance and Revenue, under section 503 of The Fiscal Code, is sufficiently broad to include all situations about which you now ask to be advised. Therefore, it will not be necessary to decide the question of independent jurisdiction under the appropriation acts.

(c) What payments may be refunded in the exercise of the jurisdiction conferred by section 503 of The Fiscal Code?

Section 503 of The Fiscal Code refers to payments "as the result of an error of law or of fact, or of both law and fact". The appropriation acts referred to in our answer to the preceding question refer to taxes "paid in error or over-paid". It has been suggested that if the appropriation acts were to be interpreted as conferring jurisdiction on the Board of Finance and Revenue the jurisdiction of the board, by reason of the word "overpaid", might be broader than that conferred by section 503 of The Fiscal Code.

Without attempting to define all the possible applications of the words "error of law or of fact", we advise you that they are sufficiently broad to include all overpayments of additional transfer inheritance tax made for the purpose of securing the 80 percent credit on Federal estate tax. Since liability for additional transfer inheritance tax under the Act of May 7, 1927, P. L. 859, depends entirely upon liability for Federal estate tax, and since our statutes do not and could not competently provide a system by which the courts of this Commonwealth may pass upon the correctness of any determination of liability for Federal estate tax, it is our opinion that the plain intention of the legislature is that any payment of additional transfer inheritance tax which later proves to have been an overpayment, by reason of subsequent final determination of Federal estate tax in an amount less than that originally determined, is to be considered a payment made in error of law or fact, or both law and fact, whether the diminution of liability for Federal estate tax results from the estate securing a reduction in the valuation of admitted assets, the exclusion of questioned assets or the inclusion of questioned credits.

Further evidence of the intention of the legislature in this respect is found in section 1 of the Act of May 16, 1929, P. L. 1782, which amended section 1 of the Act of May 7, 1927, P. L. 859, by authorizing a provisional estimate for the payment of additional transfer inheritance taxes to the Commonwealth

on account and final appraisement after the amount of Federal estate tax has been finally determined. Since the final appraisement may determine a liability either greater or less than that shown by the provisional appraisement, it is evident that the legislature must have intended that there be available to the estate some method of procuring a refund in cases where the final appraisement determined a liability less than that shown by the original appraisement. In our opinion, section 503 of The Fiscal Code gives the Board of Finance and Revenue jurisdiction to make refunds upon the happening of this event.

Therefore, you are advised that payments to the Commonwealth of additional transfer inheritance tax to take advantage of the 80 percent credit on Federal estate tax, which upon subsequent determination of liability for Federal estate tax prove to have been overpayments, are payments made in error of law or of fact or of both law and fact, within the meaning of section 503 of The Fiscal Code.

## II. *Limitation as to filing petitions for refund*

(a) Is the filing with the United States Board of Tax Appeals of a petition for a redetermination of Federal estate tax liability an involvement of the estate in litigation?

This is the first question involving the provisions of section 503 of The Fiscal Code as to the limitation on the time for filing of petitions for refunds. We have already quoted the pertinent parts of section 503.

This question arises in the estate of Alfred W. Fleisher. In this case a petition for refund of additional transfer inheritance tax is now pending before the Board of Finance and Revenue.

On September 3, 1931, the Commissioner of Internal Revenue made a deficiency assessment of Federal estate tax. On October 31, 1931, the executors petitioned the United States Board of Tax Appeals for a redetermination of liability, raising a question of the value of assets admittedly forming a part of the taxable estate. On December 10, 1931, the executors made a payment to the Commonwealth of Pennsylvania, which included the additional transfer inheritance tax due the Commonwealth of Pennsylvania by reason of the deficiency assessment. This payment was made to take advantage of the 80 percent credit on the Federal estate tax, which is allowed only for taxes actually paid, thus avoiding double payment of the amount of the 80 percent credit. The executors now seek a refund of part of this payment.

On January 4, 1934, pursuant to stipulation entered into between counsel for the executors and counsel for the Commissioner of Internal Revenue, the Board of Tax Appeals entered an order to the effect that a considerable overpayment had been made. Since the amount of additional transfer inheritance tax to which the Commonwealth is entitled depends entirely upon the amount of Federal estate tax to which the Federal Government is entitled, it is clear that the decision of the Board of Tax Appeals that there was an overpayment to the Federal Government automatically decides that there was an overpayment to the Commonwealth of Pennsylvania.

On February 13, 1934, the executors filed their petition for refund with the Board of Finance and Revenue. The petition for refund was filed more than 2 years after the payment of the tax sought to be refunded.

The question before us is whether proceedings in this estate before the Board of Tax Appeals for the redetermination of tax liability are an involvement of the estate in litigation by reason whereof there was an overvaluation of that portion of the estate on which the tax was assessed and paid. If the proceedings

in this estate were such an involvement in litigation, the board has jurisdiction to grant the refund, since the petition for refund was filed within 1 year from the determination of the proceedings. If the proceedings were not such an involvement in litigation, the board is without jurisdiction to grant the refund, since the petition for refund was not filed within 2 years from the date of the payment alleged to have been erroneously made.

We must first determine whether proceedings before the Board of Tax Appeals are litigation. Later we shall consider the meaning of the words, "by reason whereof there was an overvaluation of that portion of the estate on which the tax was assessed and paid, which overvaluation could not have been ascertained within said period of two years".

Litigate is thus defined in the Century Dictionary:

"To make the subject of a suit at law; bring before a court of law for decision; prosecute or defend at law, as a right or claim."

Litigation is the act or process of litigating as so defined.

Litigation is thus defined in 38 C. J. 68:

"A contest in a court of justice, for the purpose of enforcing a right; a judicial contest; a judicial controversy; a suit at law; the act or process of litigation."

The United States Board of Tax Appeals is an independent agency in the executive branch of the Government of the United States. The board is nevertheless vested with judicial as well as administrative functions, and in the exercise of its judicial functions it acts as a court in determining questions of law and fact in controversies submitted to it for decision.

At the time the instant case arose, the jurisdiction and powers of the Board of Tax Appeals were regulated by the appropriate sections of the Revenue Act of 1926. Section 1000 of chapter 27 of the Revenue Act of February 26, 1926, 44 Stat. at L. 9, 106, 26 U. S. C. §1216, provides:

"The Board and its divisions shall have such jurisdiction as is conferred on them by Title II and Title III of the Revenue Act of 1926 or by subsequent laws."

Section 308(a), ch. 27, of the Revenue Act of February 26, 1926, 44 Stat. at L. 9, 75, 26 U. S. C. §1101, reads, in part, as follows:

"If the Commissioner determines that there is a deficiency in respect to the tax imposed by this title, the Commissioner is authorized to send notice of such deficiency to the executor by registered mail. Within 60 days after such notice is mailed (not counting Sunday as the sixtieth day), the executor may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. . . ."

Section 501, ch. 277, of the Revenue Act of May 10, 1934, 48 Stat. at L. 680, 755, extended the time for filing petitions to 90 days, and provided that neither legal holidays in the District of Columbia nor Sundays should be counted as the ninetieth day.

Practice and procedure before the Board of Tax Appeals follow well-defined rules. If necessary, evidence is taken to aid in the determination of disputed questions of fact. The decision of the Board of Tax Appeals on questions of fact is prima facie correct on appeal to the Circuit Court of Appeals. Decisions of the board are final except when reviewed by a higher court as provided by law. Section 1003 of chapter 27 of the Revenue Act of 1926, 26 U. S. C. §1226, provides that the Circuit Court of Appeals and the Court of Appeals of the District of Columbia shall have exclusive jurisdiction to review the decisions of the board and that the judgment of any such court shall be final except that it shall be subject to review by the Supreme Court of the United States upon certiorari. The courts of appeals may also certify questions to the Supreme

Court in cases in which they have been asked to review decisions of the Board of Tax Appeals.

The filing before the Board of Tax Appeals of a petition for redetermination of tax liability is an essential statutory step taken by a taxpayer to procure a final adjudication of the amount of his tax liability. It is the submission of a controversy to a tribunal competent to adjudicate the rights of the parties to the controversy. In our opinion it is litigation within the meaning of section 503 of The Fiscal Code.

Therefore, you are advised that where additional transfer inheritance tax has been paid to the Commonwealth of Pennsylvania because of a deficiency assessment of Federal estate tax, the filing with the Board of Tax Appeals of a petition for redetermination of the Federal estate tax liability is an involvement of the estate in litigation and that a petition for refund of additional transfer inheritance tax paid to the Commonwealth under these circumstances is within the jurisdiction of the Board of Finance and Revenue if filed with the board within 1 year from final determination of the tax liability by the Board of Tax Appeals or final determination by the court, if appealed.

(*b*) Is the filing of a claim for refund of Federal estate tax with the Commissioner of Internal Revenue an involvement of the estate in litigation?

If we determine that such proceedings are an involvement in litigation, we shall later consider the meaning of the words "by reason whereof there shall have been an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of two years."

This question arises in the estate of William B. Wood. On April 22, 1931, the executors paid additional transfer inheritance tax to the Commonwealth of Pennsylvania. On February 17, 1933, the executors filed a claim for refund of Federal tax with the Commissioner of Internal Revenue. This claim was therefore made within 2 years from the date of payment of the tax sought to be refunded. On March 23, 1933, prior to any decision by the commissioner, but nevertheless within 2 years from the date of payment of the additional transfer inheritance tax, the executors filed with the Board of Finance and Revenue their petition for refund of such tax, reciting the foregoing petition and claiming a refund in an amount exceeding that now sought. Since at the time of the filing of this latter petition the Commissioner of Internal Revenue had not yet disposed of the claim for refund filed with him, the Board of Finance and Revenue could not have awarded a refund to the estate on this petition. The executors, however, contend that this petition has the effect of suspending the running of the limitation contained in section 503 of The Fiscal Code.

On January 20, 1934, the Commissioner of Internal Revenue issued a certificate of overassessment and awarded a refund of part of the amount claimed by the executors. On April 5, 1934, the executors filed their supplemental petition with the Board of Finance and Revenue, reducing the amount claimed to conform to the ruling of the Commissioner of Internal Revenue. If the filing of the claim with the Commissioner of Internal Revenue was "litigation" within the meaning of section 503 of The Fiscal Code, the supplemental petition was filed within 1 year from the termination of such litigation.

Since the amount of additional transfer inheritance tax to which the Commonwealth is entitled depends entirely upon the amount of Federal estate tax to which the Federal Government is entitled, it is clear that the decision of the Commissioner of Internal Revenue that there was an overpayment to the Federal Government automatically decides that there was an overpayment to the Commonwealth of Pennsylvania.

An affirmative ruling on either of two propositions will result in a decision favorable to the claimant. These propositions may be stated as follows:

1. The filing of the original petition for refund with the Board of Finance and Revenue suspends the running of the limitation contained in section 503 of The Fiscal Code.

2. The filing of the claim for refund with the Commissioner of Internal Revenue operated to suspend the running of the limitation contained in section 503 of The Fiscal Code.

If we affirm the second proposition, it will not be necessary to determine the correctness of the first. If the second is true, the filing of the supplemental petition based on the final determination of the disputed question by the Commissioner of Internal Revenue was within 1 year of the termination of the "litigation" and the Board of Finance and Revenue would have jurisdiction to entertain the supplemental petition without regard to the time of filing of the original petition.

Section 1111 of The Revenue Act of 1926, 26 USC §149, as last amended by section 3 of the Act of May 29, 1928, 45 Stat. at L. 986, 996, reads, in part, as follows:

"Except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes, the Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected; . . ."

The proceedings on a claim for refund possess many of the attributes of litigation. The claim as filed with the commissioner is supported by the affidavit of the claimant. Hearings may be had and testimony taken in support of the claim. Questions of both fact and law are determined, and the decision of the commissioner will be a final determination of the rights of the parties unless a suit is brought for the recovery of the taxes. Such a claim for refund may be allowed by the Commissioner of Internal Revenue and may never come before any court for determination or adjudication.

However, in determining whether such a claim is "litigation", as that word is used in section 503 of The Fiscal Code, we feel that great weight must be given to another important statutory provision with reference to the filing of such claims. Section 1 of the Act of February 27, 1877, c. 69, 19 Stat. at L. 248, Rev. Stat. sec. 3226, 26 USC §156, as last amended by section 1103(a) of the Act of June 6, 1932, c. 209, 47 Stat. at L. 169, 286, reads as follows:

"No suit or proceedings shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of two years from the date of mailing by

registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates."

This act has two important effects on the time for the beginning of a suit to recover a tax:

1. A taxpayer must file a claim for refund before he begins such a suit.

2. Even if he files a claim, he must postpone the institution of such a suit for a minimum of 6 months.

A taxpayer's suit to recover internal revenue tax alleged to be erroneously or illegally assessed or collected is clearly litigation, even in the most narrow and restricted sense of the word. If we were to hold that "litigation", as defined in section 503 of The Fiscal Code, applies in the present case only to a suit for the recovery of taxes, our ruling would automatically result in a shortening of the statutory period. Since the taxpayer cannot bring his suit until after the expiration of 6 months from the filing of a claim for refund, such a ruling would compel a taxpayer who tried to comply with The Fiscal Code to file a claim for refund with the Federal Government within 18 months of the time of payment of the tax to the Commonwealth of Pennsylvania. We do not believe The Fiscal Code was intended to have any such effect.

It is our opinion, therefore, that the proceedings before the Commissioner of Internal Revenue on a claim for refund of Federal estate tax alleged to have been erroneously or illegally assessed or collected are "litigation" within the meaning of section 503 of The Fiscal Code.

Since we have affirmed our second proposition, it will not be necessary for us to pass upon the first.

Therefore, you are advised that, where additional transfer inheritance tax has been paid to the Commonwealth of Pennsylvania because of an assessment of Federal estate tax, the filing of a claim for refund with the Commissioner of Internal Revenue is an involvement of the estate in "litigation" and that a petition for refund of additional transfer inheritance tax paid the Commonwealth under these circumstances is within the jurisdiction of the Board of Finance and Revenue if filed with the board within 1 year from the final determination of the tax liability by the Commissioner of Internal Revenue or final determination by the courts of a suit brought for the recovery of the tax claimed to be refundable.

(c) What is the meaning of the words "by reason whereof there shall have been an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of two years"?

In sections A and B of part II, we decided that two common forms of procedure for the reduction of the Federal estate tax liability were "involvements of the estate in litigation". In each part, we stated that we would later consider the effect of the words "by reason whereof there shall have been an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of two years." In both the estates which were the subject of consideration in sections A and B of part II of this opinion, the dispute between the taxpayer and the Commissioner of Internal Revenue was as to the correct value of certain property admitted to have been assets of the taxable estate. The Commissioner of Internal Revenue contended for one value. The taxpayers contended for a lower value. The tax was paid on the higher value. The involvement of the estate in litigation before the Board of Tax Appeals or the Commissioner of Internal Revenue postponed until the termination of such litigation the ascer-

tainment of the correct amount of tax liability. A petition for refund, therefore, could not have been filed within the 2-year period.

The correct amount of tax depends upon the value of the estate. We are of the opinion that the exception of section 503 of The Fiscal Code must be interpreted to mean that any involvement in litigation which postpones until the termination of such litigation the ascertainment of the true value of the net taxable estate will suspend the running of the statutory period. If the true value of the net taxable estate depends upon the determination of the question involved in the petition for redetermination or the claim for refund, the involvement in litigation satisfies the foregoing requirements. This includes proceedings which have for their purpose the determination of the true value of admitted assets, the determination of whether or not certain property is an asset of the estate, or the determination of the amount of deductible liabilities of the estate.

Therefore, you are advised that an involvement of the estate in litigation which postpones until the termination of such litigation the ascertainment of the true value of the net taxable estate is, as provided in the statute, an involvement in litigation by reason whereof there shall have been an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of 2 years.

(*d*) Must litigation be begun within 2 years from the date of payment of the tax sought to be refunded, in order to extend the time allowed for filing a petition for refund with the Board of Finance and Revenue?

This question arises in the estate of George B. Gordon, who died September 8, 1927. On August 21, 1929, his executor paid the tax of which he now seeks a refund. The 2-year limit for filing a petition for refund with the Board of Finance and Revenue expired August 21, 1931. A claim for refund was filed with the Commissioner of Internal Revenue on October 9, 1931, more than 2 years after the payment to the Commonwealth of the tax of which he now seeks a refund. On May 19, 1933, within 1 year from the favorable decision of the Commissioner of Internal Revenue on the claim for refund filed with him, a petition for refund was filed with the Board of Finance and Revenue. This petition was filed nearly 4 years after the tax was paid.

We have previously advised you that the filing of a claim for refund with the Commissioner of Internal Revenue is "litigation" within the meaning of section 503 of The Fiscal Code. The only question here involved is whether the "litigation" was begun in time to suspend the running of the period provided by the statute.

Where the Federal estate tax has been determined against a particular estate in an amount higher than that justified by the law and the facts, and, by reason of such determination, the estate has overpaid both Federal and State taxes, the estate has two claims for refund, one against the Federal Government and the other against the State Government. During the pendency of proceedings to procure a refund of Federal estate tax, the estate is unable to proceed with its claim against the State for a refund of additional transfer inheritance tax, because the right to a refund from the State follows from the determination that there is a refund due the estate from the Federal Government. The Fiscal Code recognizes this disability and provides in section 503 that the time for filing a claim for refund with the Board of Finance and Revenue shall be extended during an involvement of the estate in litigation and for 1 year from the termination of such litigation.

The provision in section 503 of The Fiscal Code is in the nature of a statute of limitation. It restricts the period within which the taxpayer may assert his

right to a refund. The effect of a statute of limitations is to bar a remedy after a fixed period of time. It is our opinion that this principle applies to the provisions of section 503 of The Fiscal Code and that the running of the statutory period bars the taxpayer's remedy. When the filing of a claim for refund with the Board of Finance and Revenue has once been barred by lapse of time, the subsequent filing of a claim for refund with the Commissioner of Internal Revenue does not operate to restore or revive the barred remedy.

An additional reason for concluding that the litigation must be begun within 2 years is found in the language of the section. The running of the statutory period is suspended "when the estate . . . shall have been involved in litigation". The use of the words "shall have been" indicates plainly that the legislature intended that the involvement in litigation must have occurred before the limitation of the act became effective.

Therefore, you are advised that where the litigation relied upon as suspending the statutory period of limitation provided in section 503 of The Fiscal Code was not begun or commenced within the statutory period of 2 years the Board of Finance and Revenue has no jurisdiction to entertain a petition for refund filed with the said board more than 2 years after the payment of the tax sought to be refunded.

### . Summary

#### I. *The jurisdiction of the board*

A. The Board of Finance and Revenue has jurisdiction to consider petitions for the refund of additional transfer inheritance tax paid to the State Government under the provisions of the Act of May 7, 1927, P. L. 859, as amended.

B. The question of independent jurisdiction under the appropriation acts is not decided.

C. Payments to the Commonwealth of additional transfer inheritance tax to take advantage of the 80 percent credit on Federal estate tax upon determination of liability for Federal estate tax, which prove to have been overpayments by reason of subsequent redetermination of liability for Federal estate tax, are payments made in error of law or of fact, or of both law and fact, within the meaning of section 503 of The Fiscal Code, and the board has jurisdiction to make refunds of such payments.

#### II. *Limitation as to filing petitions for refund*

A. The filing with the United States Board of Tax Appeals of a petition for redetermination of Federal estate tax liability is an involvement of the estate in litigation extending the usual 2-year period for filing a petition for refund with the Board of Finance and Revenue.

B. The filing of a claim for refund of Federal estate tax with the Commissioner of Internal Revenue is an involvement of the estate in litigation extending the usual 2-year period for filing a petition for refund with the Board of Finance and Revenue.

C. An involvement of the estate in litigation which postpones until the termination of such litigation the ascertainment of the true value of the net taxable estate is an involvement in litigation by reason whereof there was an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of 2 years.

D. Where an involvement of the estate in litigation is relied on as suspending the statutory period of limitation provided by section 503 of The Fiscal Code, such litigation must be begun within 2 years after payment of the tax of which refund is sought.                    From C. P. Addams, Harrisburg, Pa.